# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ROBERT R. LIEBLING,<br>LILY L. ZHAO,<br>　　　　　Plaintiffs,<br><br>v.<br><br><br>CHRISTINA POULOS, Director,<br>　United States Citizenship and Immigration<br>　Services, California Service Center<br>EMILIO T. GONZALEZ, Director, U.S.<br>　Citizenship and Immigration Services;<br>MICHAEL MUKASKEY, Attorney General<br>　of the United States;<br>MICHAEL CHERTOFF, Secretary,<br>　Department of Homeland Security;<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**07CV6406**
**JUDGE DARRAH**
**MAG. JUDGE KEYS**

**FILED**

NOV 1 8 2007
13
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

COMES NOW, Plaintiffs, Lily L. Zhao and Robert R. Liebling, in the above-styled and numbered case, and for cause of action would show unto the Court the following:

## I. INTRODUCTION

1.　This is a civil action seeking mandamus, declaratory, and injunctive relief based

on the failure of the United States Citizenship and Immigration Services ("CIS") to ad-

judicate the I-130 petition filed by Robert R. Liebling on behalf of Lily Zhao. The peti-

tion was filed on February 17, 2006 with CIS, California Service Center.

## II. JURISDICTION

2.     This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331

(federal question jurisdiction); 28 U.S.C. § 2201 (Declaratory Judgment Act); 5 U.S.C.

§ 555 and § 701 et seq. (Administrative Procedures Act); and 28 U.S.C. § 1361 (man-

damus statute). Relief is requested pursuant to said statutes.

## III.   VENUE

3.     Venue is appropriate in the District Court for the Northern District of Illinois.

See 28 U.S.C. § 1391(e). Plaintiffs reside at 5508 South Bruneo Street, Hinsdale, Illi-

nois 60521, which is within the jurisdiction of the Northern District of Illinois.

## IV.  PLAINTIFFS

4.     Plaintiff Robert Ray Liebling is a United States citizen.

5.     Plaintiff Lily Zhao (Liebling) is a native and citizen of China. She is a lawful

permanent resident of the United States.

6.　　Plaintiffs Zhao and Liebling are married.  They have been married since January 6, 2006.

7.　　Plaintiff Liebling filed an J-130 petition on behalf of Plaintiff Zhao on February 17, 2006.  Plaintiffs have not received a decision on the I-130 petition.

8.　　Plaintiff Zhao will be applying for adjustment of status with the Immigration Court once the I-130 petition is approved.

## V. DEFENDANTS

9.　　Defendant Christina Poulos is the Director of the CIS California Service Center. This is the CIS Office where the I-130 petition at issue was filed.  The I-130 is still pending with the California Service Center.

10.　　Defendant Emilio T. Gonzalez is the Director of United States Citizenship and

Immigration Services.

11.      Defendant Michael Chertoff is the Secretary of the Department of Homeland Security. As a result of a massive reorganization, the Immigration and Naturalization Service was dissolved on March 1, 2003 and its functions were taken over by the Department of Homeland Security. CIS is a branch of the Department of Homeland Security.

12.      Michael Mukaskey is the Attorney General of the United States.

13.      All Defendants are being sued in their official capacities.

## VI. FACTUAL BACKGROUND

14.      Plaintiff Robert Ray Liebling is a United States citizen. He is married to Plaintiff Lily Zhao (A# 73 124 177), who is a citizen of China.

15.      On July 19, 1995, Ms. Zhao was granted lawful permanent resident status in the

United States.

16.    On June 30, 2000, Ms. Zhao was placed into removal proceedings by the Legacy Immigration and Naturalization Service ("INS"). The INS issued a Notice to Appear alleging that Ms. Zhao was subject to removal for committing two crimes involving moral turpitude after her admission to the United States. The offenses at issue were a 1995 Illinois retail theft conviction and a 1997 Michigan attempted retail fraud conviction. The 1995 conviction was subsequently reduced to disorderly conduct. The 1997 Michigan conviction was vacated.

17.    Removal proceedings were conducted at the Immigration Court in Detroit, Michigan before the Honorable Judge Hacker. The Immigration Judge concluded that Ms. Zhao was subject to removal as charged in the Notice to Appear. The Court found that the vacated Michigan conviction and the amended Illinois conviction could still be used for immigration purposes. Thus, the Court looked at whether the original convictions were for crimes involving moral turpitude. Having found that the original convictions were for crimes involving moral turpitude, the Court concluded the INS met its burden of establishing removal.

18.   Ms. Zhao applied for asylum with the Immigration Court. She filed an I-589 with the Court and the case was set for a hearing on her asylum application.

19.   Ms. Zhao's hearing was on November 3, 2004. At that hearing, the parties agreed to administratively close Ms. Zhao's removal case. (Exhibit A) The purpose of the administrative closure was to allow Ms. Zhao to pursue other relief. Specifically, since Ms. Zhao's parents were United States citizens, they could petition for Ms. Zhao to remain in the United States by filing an I-130 petition on her behalf. Once the I-130 was approved and the priority date current, Ms. Zhao could then apply to adjust status as a defense to removal. She would also need a waiver under INA § 212(h) for her inadmissibility based on the two criminal convictions. Adjustment of status is available as a defense to removal even if a person is already a lawful permanent resident.

20.   The case was closed and Ms. Zhao provided the Court with a copy of the receipt notices for the I-130 petitions filed by her parents. (Exhibit B, I-130 receipt notices filed by Ms. Zhao's parents).

21.   Robert Liebling and Lily Zhao were married on January 6, 2006.

22.     On February 17, 2006, Robert Liebling filed an I-130 petition on behalf of Lily

Zhao with CIS, California Service Center (WAC-06-116-51371). (Exhibit C, I-130 re-

ceipt notice for petition filed by Robert Liebling)  Since Mr. Liebling is a United States

citizen, he is considered an immediate relative and Ms. Zhao will be eligible to apply

for adjustment of status upon approval of the petition.  Like the I-130 petitions filed by

Zhao's parents, the purpose of the I-130 filed by Robert Liebling was to provide a de-

fense to removal.  However, the I-130 filed by Robert Liebling is a faster way to pro-

ceed since the priority date will be current upon approval whereas it will take longer

with the parents' I-130s since the priority date is not current.


23.     On December 20, 2006, CIS sent Ms. Zhao's attorney information in response to

an inquiry stating the following:

> "Your case has been administratively closed on May 11, 2006 because the bene-
> ficiary has become a lawful permanent resident on July 19, 1995.  In addition, a
> review of service records reveals that the I-90 application (MSC0540168280) for
> this beneficiary was approved and the LPR card was issued on November 17,
> 2005.  This administrative closure has no effect on the lawful permanent resident
> status already acquired by Lily Ling Liebling."

(Exhibit D, December 20, 2006 response from CIS)

24.     On December 29, 2006, Margaret Wong sent a letter and supporting documents

to CIS explaining that the case should not be administrative closed and that the I-130 is

needed as a defense to removal. (Exhibit E, December 29, 2006 letter to CIS) The letter requests that CIS resume processing the petition.

25.     After not receiving a response for several months, counsel's office sent another letter to CIS in July 2007 requesting that processing resume on the I-130 petition. (Exhibit F, July 10, 2007 letter to CIS) In October 2007, CIS responded and stated that the case was administratively closed because Ms. Zhao is already a lawful permanent resident of the United States.

26.     Plaintiff's I-130 petition is still pending with CIS, California Service Center. Her removal case is administratively closed pending eligibility for adjustment of status.

## VII.  CAUSE OF ACTION

27.     Plaintiffs incorporate by reference paragraphs 1-26 of the Complaint.

28.     Plaintiffs are requesting that Defendants immediately take all actions necessary to adjudicate the pending I-130 petition. The I-130 petition has been pending for almost

two years.

29.     Plaintiffs have a clear right to have the I-130 petition adjudicated in a timely manner.    The adjudication of immigration applications is a ministerial, non-discretionary task that Defendants must perform within a reasonable period of time. See Yu v. Brown, 36 F.Supp.2d 922, 931 (D.N.M. 1999).

30.     Defendants have failed to properly carry out their adjudicative functions delegated to them.  The Government officials and Agencies named in the Complaint violated their statutory and regulatory duties owed to Plaintiffs to timely adjudicate the I-130 petition, which has been pending since February 2006.  See 5 U.S.C. § 555(b)(Agency required to conclude matters presented to it within a reasonable period of time).  This is certainly ample time to issue a decision in accordance with the applicable laws and regulations.  The delay in adjudicating the case is entirely unreasonable.

31.     No other adequate remedy is available to the Plaintiffs.  CIS has taken the erroneous position that the I-130 should be administratively closed because Plaintiff Zhao is currently a permanent resident.  However, this is incorrect.  Ms. Zhao is in removal proceedings as the Government is attempting to take her green card due to the two criminal convictions.  She has been found to be subject to removal by an Immigration Judge and

the only thing left for the Judge to consider is relief from removal. The Board of Immigration has held that the fact that a person is a lawful permanent resident is not a bar to filing an adjustment of status application as a defense to removal. Matter of Mendez, 21 I&N Dec. 296, 298 (BIA 1996). The approved I-130 is a prerequisite to applying for adjustment of status in the instant case. The reason that the parties agreed to administratively close the removal case was to allow Ms. Zhao time to become eligible for adjustment of status so that she could proceed with that relief before the Immigration Court.

32.    Because of CIS' refusal to process the case, there has been no interview. Plaintiff Zhao is clearly eligible to receive an approval of the I-130 petition despite her status as a lawful permanent resident. In fact, the Immigration Judge administratively closed Plaintiff Zhao's case to allow her to get an approved I-130 petition so that she could apply for adjustment of status with the Court.

33.    The delay has resulted in significant hardship to Plaintiffs. Plaintiff Zhao will be eligible to adjust status with the Immigration Court once her I-130 is approved. If the application is granted, it would resolve the removal case and allow Plaintiffs to move on with their lives in the United States.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

(1)    Assume jurisdiction of this cause;

(2)    Declare that the delay in adjudicating the I-130 petition is unreasonable
       and that Plaintiff Zhao is eligible for approval of an I-130 petition.

(3)    Compel the Defendants and those acting under them to perform their
       duties as required under the applicable statutes, regulations, and Board
       precedent relating to adjudication of immigrant visa petitions.

(4)    Compel Defendants to immediately take all actions necessary to adjudi-
       cate the I-130 petition filed by Plaintiff Liebling on behalf of Plaintiff
       Zhao within 60 days of this Court's Order.

(5)    Grant reasonable attorney's fees;

(6)    Grant any other relief as this Court deems proper.

Dated: 11/13/07

Respectfully submitted,

Scott Eric Bratton
Attorney for Petitioner
3150 Chester Ave.
Cleveland, Ohio 44114
(216) 566-9908
(216) 566-1125 (fax)

## CERTIFICATE OF SERVICE

I, Scott E. Bratton, hereby certify that I have served a copy of the foregoing this ____ th day of November, 2007 to:

- Christina Poulos, Director
  USCIS – California Service Center
  24000 Avila Rd.
  2nd Floor, Rm. 204
  Laguna Niguel, CA 92677

- Michael Mukaskey, Attorney General of the United States
  U.S. Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, DC 20530-0001

- Michael Chertoff, Secretary, Department of Homeland Security
  United States Department of Homeland Security
  Washington, DC 20528

- Emilio T. Gonzalez, Director
  U.S. Citizenship and Immigration Services
  20 Massachusetts Ave., NW
  Washington, DC 20529

- Patrick Fitzgerald, USA
  U.S. Attorney's Office
  219 S. Dearborn St., 5th Floor
  Chicago, IL 60604

Scott E. Bratton
Margaret W. Wong & Associates

## EXHIBIT LIST

**Exhibit A**    - Order from Immigration Court that administratively
                  closed Ms. Zhao's removal case

**Exhibit B**    - I-130 Receipt Notice for petition filed by Ms. Zhao's parents

**Exhibit C**    - I-130 Receipt Notice for petition filed by Robert Liebling

**Exhibit D**    - December 20, 2006 CIS response to an inquiry

**Exhibit E**    - December 29, 2006 Letter to CIS

**Exhibit F**    - July 10, 2007 Letter to CIS

**EXHIBIT A**

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
1155 BREWERY PARK BLVD.STE 450
DETROIT  MI  48207

In the Matter of: ZHAO, LILY

Case No : A78-124-177

IN REMOVAL PROCEEDINGS

SCOTT E. BRATTON
MARGARET W. WONG & ASSOC. CO, LPA
3150 CHESTER AVENUE
CLEVELAND, OH  44114

DEPARTMENT OF HOMELAND SECURITY, INS

ORDER OF THE IMMIGRATION JUDGE

It is HEREBY ORDERED that the case be administratively closed and be considered
no longer pending before the Immigration Judge for the following reason:

( X )  Upon joint request by both parties.

(   )  Other: _____

_____

_____

If either party in this case desires further action on this matter, at any time
hereafter, a written motion to recalendar the case (including a certificate of
service on the opposing party) must be filed with the Office of the Immigration
Court having administrative control over the Record of Proceeding in this case.

ELIZABETH A. HACKER
Immigration Judge
Date:  Nov 3, 2004

Appeal:  WAIVED  (A/1/B)
Appeal Due By: _____

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY:  MAIL (M)  PERSONAL SERVICE (P)
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [X] Alien's ATT/REP  [X] INS
DATE: 11/3/04 _____  BY: COURT STAFF _____
     Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

Form EOIR 39 - 51 (Admin Close)
PCZ

**EXHIBIT B**

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER | CASE TYPE I130 IMMIGRANT PETITION FOR RELATIVE, |
| --- | --- |
| WAC-05-040-51582 | FIANCE(E) OR ORPHAN |

| RECEIVED DATE | PRIORITY DATE | PETITIONER A45 411 937 |
| --- | --- | --- |
| November 16, 2004 | | ZHAO, PETER S |

| NOTICE DATE | PAGE | BENEFICIARY A73 124 177 |
| --- | --- | --- |
| November 29, 2004 | 1 of 1 | ZHAO, LILY L |

MARGARET W. WONG
MARGARET W WONG AND ASSOCIATES LPA
RE: PETER SHENG ZUO ZHAO
3150 CHESTER AVE
CLEVELAND OH 44114

Notice Type: Receipt Notice

Amount received: $ 185.00
Section: Unmarried child (age 21 or older) of U.S. Citizen, 201(a)(1) INA

Receipt notice - If any of the above information is incorrect, call customer service immediately.

Processing time - Processing times vary by kind of case.
- You can check our current processing time for this kind of case on our website at uscis.gov.
- On our website you can also sign up to get free e-mail updates as we complete key processing steps on this case.
- Most of the time your case is pending the process will not change because we will be working on others filed earlier.
- We will notify you by mail when we make a decision on this case, or if we need something from you. If you move while this case is pending, call customer service when you move.
- Processing times can change. If you don't get a decision or update from us within our current processing time, check our website or call for an update.

If you have questions, check our website or call customer service. Please save this notice, and have it with you if you contact us about this case.

Notice to all customers with a pending I-130 petition - USCIS is now processing Form I-130, Petition for Alien Relative, as a visa number becomes available. Filing and approval of an I-130 relative petition is only the first step in helping a relative immigrate to the United States. Eligible family members must wait until there is a visa number available before they can apply for an immigrant visa or adjustment of status to lawful permanent resident. This process will allow USCIS to concentrate resources first on cases where visas are actually available. This process should not delay the ability of one's relative to apply for an immigrant visa or adjustment of status. Refer to www.state.gov/travel <http://www.state.gov/travel> to determine current visa availability dates. For more information, please visit our website at www.uscis.gov or contact us at 1-800-375-5283.

Always remember to call customer service if you move while your case is pending. If you have a pending I-130 relative petition, also call customer service if you should decide to withdraw your petition or if you become a U.S. citizen.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL CA 92607-0111
Customer Service Telephone: (800) 375-5283



## THE UNITED STATES OF AMERICA

| RECEIPT NUMBER WAC-05-040-51677 | | CASE TYPE I-130 IMMIGRANT PETITION FOR RELATIVE, FIANCE (E), OR ORPHAN |
|---|---|---|
| RECEIVED DATE November 16, 2004 | PRIORITY DATE | PETITIONER A95 411 936 ZHAO, SYNTHIEA Y |
| NOTICE DATE November 29, 2004 | PAGE 1 of 1 | BENEFICIARY A73 124 177 ZHAO, LILY L |

MARGARET W. WONG
MARGARET W WONG AND ASSOCIATES LPA
RE: SYNTHIEA YU LING ZHAO
3150 CHESTER AVE
CLEVELAND OH 44114

Notice Type: Receipt Notice

Amount received: $ 185.00
Section: Unmarried child (age 21 or older) of U.S. Citizen, 201(a)(1) INA.

Receipt notice - If any of the above information is incorrect, call customer service immediately.

Processing time - Processing times vary by kind of case.
- You can check our current processing time for this kind of case on our website at uscis.gov.
- On our website, you can also sign up to get free email or text message updates when we complete key processing steps on this case.
- Most of the time your case is pending the processing times below, will not change because we will be working on others filed earlier.
- We will notify you by mail when we make a decision on this case, or if we need something from you. If you move while this case is pending, call customer service when you move.
- Processing times can change. If you don't get a decision or update from us within our current processing time, check our website or call for an update.

If you have questions, check our website or call customer service. Please save this notice, and have it with you if you contact us about this case.

Notice to all customers with a pending I-130 petition - USCIS is now processing Form I-130, Petition for Alien Relative, as a visa number becomes available. Filing and approval of a relative petition is only the first step in helping a relative immigrate to the United States. Eligible family members must wait until there is a visa number available before they can apply for an immigrant visa or adjustment of status to lawful permanent resident. This process will allow USCIS to concentrate resources first on cases where visas are actually available. This process should not delay the ability of one's relative to apply for an immigrant visa or adjustment of status. Refer to www.state.gov/travel <http://www.state.gov/travel> to determine current visa availability dates. For more information, please visit our website at www.uscis.gov or contact us at 1-800-375-5283.

Always remember to call customer service if you move while your case is pending. If you have a pending I-130 relative petition, also call customer service if you should decide to withdraw your petition or if you become a U.S. citizen.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL, CA 92607-0111
Customer Service Telephone: (800) 375-5283



**EXHIBIT C**

# THE UNITED STATES OF AMERICA

| | |
|---|---|
| RECEIPT NUMBER<br>WAC-06-116-51371 | CASE TYPE  I130    IMMIGRANT PETITION FOR RELATIVE,<br>FIANCE(E), OR ORPHAN |
| RECEIVED DATE<br>February 17, 2006 | PRIORITY DATE |
| NOTICE DATE<br>March 2, 2006 | PAGE<br>1 of 1 |

PETITIONER

LIEBLING, ROBERT R.

BENEFICIARY  A073 124 177
LIEBLING, LILY L.

MARGARET W. WONG
MARGARET W WONG AND ASSOC LPA
RE: ROBERT LAY LIEBLING
MWW CENTER 3150 CHESTER AVE
CLEVELAND OH 44114

Notice Type:  Receipt Notice

Amount received: $  190.00

Section: Husband or wife of U.S.
Citizen, 201(b) INA

**Receipt notice**  If any of the above information is incorrect, call customer service immediately.

**Processing time** - Processing times vary by kind of case.
- You can check our current processing time for this kind of case on our website at **uscis.gov**.
  On our website you can also sign up to get free e-mail updates as we complete key processing
  steps on this case.
- Most of the time your case is pending the processing status will not change because we will be
  working on others filed earlier.
- We will notify you by mail when we make a decision on this case, or if we need something from you.
  If you move while this case is pending, call customer service when you move.
- Processing times can change. If you don't get a decision or update from us within our current
  processing time, check our website or call for an update.

If you have questions, check our website or call customer service. Please save this notice, and have it with you if you
contact us about this case.

**Notice to all customers with a pending I-130 petition**  USCIS is now processing Form I-130, Petition for Alien Relative,
as a visa number becomes available. Filing and approval of an I-130 relative petition is only the first step in helping
a relative immigrate to the United States. Eligible family members must wait until there is a visa number available
before they can apply for an immigrant visa or adjustment of status to a lawful permanent resident. This process will
allow USCIS to concentrate resources first on cases where visas are actually available. This process should not delay
the ability of one's relative to apply for an immigrant visa or adjustment of status. Refer to **www.state.gov/travel**
<http://www.state.gov/travel> to determine current visa availability dates. For more information, please visit our
website at www.uscis.gov or contact us at 1-800-375-5283.

**If this receipt is for an I-485, or I-698 application**
USCIS WILL SCHEDULE YOUR BIOMETRICS APPOINTMENT. You will be receiving a biometrics appointment notice with a specific
time, date and place where you will have your fingerprints and/or photos taken. You MUST wait for your biometrics
appointment notice prior to going to the ASC for biometrics processing. This I-797 receipt notice is NOT your
biometrics appointment notice and should not be taken to an ASC for biometrics processing.

**WHAT TO BRING TO YOUR BIOMETRICS APPOINTMENT-**
Please bring your biometrics appointment letter (with specific time, date and place where you will have your
fingerprints and/or photo taken) AND your photo identification to your biometrics appointment.
Acceptable kinds of photo identification are:
- a passport or national photo identification issued by your country,
- a drivers license,
- a military photo identification, or
- a state - issued photo identification card.

Always remember to call customer service if you move while your case is pending. If you have a pending I-130 relative
petition, also call customer service if you should decide to withdraw your petition or if you become a U.S. citizen.

Please see the additional information on the back.  You will be notified separately about any other cases you filed.
U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL CA 92607-0111
**Customer Service Telephone: (800) 375-5283**



**EXHIBIT D**

U.S. Department of Homeland Security
California Service Center
P.O. Box 30111
Laguna Niguel, CA 92607-0111



**U.S. Citizenship
and Immigration
Services**

Wednesday, December 20, 2006

MARGARET WONG
MARGARET WONG AND ASSOCIATES
3150 CHESTER AVE
CLEVELAND OH 44114

**ATTORNEY/PARALEGAL COPY**

ROBERT RAY LIEBLING
5508 S BRUNER ST
HINSDALE IL 60521

Dear ROBERT RAY LIEBLING:

On 11/17/2006 you, or the designated representative shown below, contacted us about your case. Some of the key information given to us at that time was the following:

| | |
|---|---|
| **Person who contacted us:** | WYNIESKI, ARTY |
| **Caller indicated they are:** | A Paralegal or Other Employee of the Attorney of Record |
| **Attorney Name:** | MARGARET WONG |
| **Case type:** | I130 |
| **Filing date:** | 03/02/2006 |
| **Receipt #:** | WAC-06-116-51371 |
| **Beneficiary (if you filed for someone else):** | LIEBLING, LILY, LING |
| **Your USCIS Account Number (A-number):** | Information not available |
| **Type of service requested:** | Case Status - Outside Processing Time |

The status of this service request is:

Your case has been administratively closed on May 11, 2006 because the beneficiary has become a lawful permanent resident on July 19, 1995. In addition, a review of service records indicates that the I-90 application (MSC0540168280) for this beneficiary was approved and the LPR Card was issued on November 17, 2005. This administrative closure has no effect on the lawful permanent resident status already acquired by Lily Ling Liebling.

If you have any further questions, please call the National Customer Service Center at 1-800-375-5283.

Please remember: By law, every person who is not a U.S. citizen and who is over the age of 14 must also notify the Department of Homeland Security within 10 days from when they move (persons in "A" or "G" nonimmigrant status are exempt from this requirement). If you have moved, please complete a Form AR-11 and mail it to the address shown on that form. If you do not have this form, you can download it from our website or you can call the National Customer Service Center at 1-800-375-5283 and we can order one for you. If you move, please call us with your new address information as soon as your move is complete. If you have already called us and given us this information, you do not need to call again.

**EXHIBIT E**



**MARGARET W. WONG**
**& ASSOC.CO.,LPA**
ATTORNEYS AT LAW

MWW Center
3150 Chester Avenue
Cleveland, Ohio 44114
Phone: 216.566.9908
Fax: 216.566.1125
E-Mail: wong@imwong.com
Web: http://www.imwong.com

Columbus, Ohio Office:
Appointment Only
Phone: 614.221.8892

Detroit, Michigan Office:
Appointment Only
Phone: 313.527.9989

Margaret W. Wong*
Scott E. Bratton
Tiny A. Murphy
Lori A. Pinjuh**

Of Counsel:
Lawrence J. Hadfield

*Also admitted for practice
New York State Bar
District of Columbia Bar
Michigan State Bar

**Also admitted for practice
Maryland State Bar

December 29, 2006

**US Department of Homeland Security**
**US Citizenship and Immigration Services**
California Service Center
PO Box 30111
Laguna Niguel, CA 92607-0111

> Re:    I-130 Petition, WAC0611651371
>        Petitioner    : Robert R. Liebling
>        Beneficiary   : Lily L. (Zhao) Liebling

To Whom It May Concern:

In January 2006, our office filed an I-130 petition for Robert Liebling on behalf of Lily LiblIng (A73 124 177). Last week, we were informed that the I-130 had been administratively closed because the beneficiary was already a lawful permanent resident. The case was apparently administratively closed in May 2006 but we never received notice. As will be discussed herein, the case should not have been administratively closed. Thus, we are asking that processing continue on the I-130 petition.

Ms. Liebling had a removal case before Immigration Judge Hacker in Detroit, Michigan. Our firm represents her in that case. She was in proceedings due to minor criminal convictions that the Court found constituted two crimes involving moral turpitude. In November 2004, the Immigration Judge, recognizing the significant equities in the case, administratively closed the case to allow Ms. Liebling's parents to file an I-130 on her behalf. This would eventually allow her to apply for adjustment of status (with a § 212(h) waiver). The I-130s were filed. However, Ms. Liebling subsequently married her current husband and he has filed an I-130 petition on her behalf (WAC0611651371).

Ms. Liebling is still a lawful permanent resident because there has not been a final removal order in her case. Once her I-130 is approved, she will be immediately eligible to apply for adjustment of status with the Immigration Judge as a defense to her removal. The fact that someone is a LPR does not bar his or her adjustment of status application in removal proceedings. See Matter of Mendez, 21 I&N Dec. 296, 298 (BIA 1996)(copy attached hereto). The approved I-130 petition is the prerequisite to adjustment of status.

No person does not have his/her time; no hour does not have its leader.

Celebrate, have faith and maintain hope - welcome to the United States, one of the best countries in the world.

Practice Focus: All Working Visas, Green Cards, Work Authorizations, Deportation and Criminal Aspects of Immigration Law and U.S. Citizenship

Thus, Ms. Liebling is the proper beneficiary of the instant I-130 petition. Ms. Liebling needs the I-130 adjudicated so that she can apply for adjustment of status in removal proceedings.

We would respectfully request that you continue processing the I-130 petition in the instant case. Please do not hesitate to contact me if you have any questions.

Very truly yours,

Margaret Wong

**EXHIBIT  F**



MWW Center
3150 Chester Avenue
Cleveland, Ohio 44114
Phone: 216.566.9908
Fax: 216.566.1125
E-Mail: wong@imwong.com
Web: http://www.imwong.com

Columbus, Ohio Office:
Appointment Only
Phone: 614.221.8892

Detroit, Michigan Office:
Appointment Only
Phone: 313.527.9989

Margaret W. Wong*
Scott E. Bratton
Troy A. Murphy
Lori A. Pinjuh**

Of Counsel:
Lawrence J. Hadfield

* Also admitted for practice:
New York State Bar
District of Columbia Bar
Michigan State Bar

**Also admitted for practice:
Maryland State Bar

July 10, 2007


US Department of Homeland Security
US Citizenship and Immigration Services
California Service Center
PO Box 30111
Laguna Niguel, CA 92607-0111

**Re: I-130 Petition, WAC0611651371**
    **Petitioner:  Robert R. Liebling**
    **Beneficiary:  Lily L. (Zhao) Liebling**

To Whom It May Concern:

　　In January 2006, our office filed an I-130 petition for Robert Liebling on behalf of Lily Liblling (A73 124 177).  In December, 2006, we were informed that the I-130 had been administratively closed because the beneficiary was already a lawful permanent resident.  The case was apparently administratively closed in May 2006 but we never received notice.  As will be discussed herein, the case should not have been administratively closed.  Thus, we are asking that processing continue on the I-130 petition.

　　Ms. Liebling had a removal case before Immigration Judge Hacker in Detroit, Michigan.  Our firm represented her in that case.  She was in proceedings due to minor criminal convictions that the Court found constituted two crimes involving moral turpitude.  In November 2004, the Immigration Judge, recognizing the significant equities in the case, administratively closed the case to allow Ms. Liebling's parents to file an I-130 on her behalf.  This would eventually allow her to apply for adjustment of status (with a § 212(h) waiver).  The I-130s were filed.  However, Ms. Liebling subsequently married her current husband and he has filed an I-130 petition on her behalf (WAC0611651371).

　　Ms. Liebling is still a lawful permanent resident because there has not been a final removal order in her case.  Once her I-130 is approved, she will be immediately eligible to apply for adjustment of status with the Immigration Judge as a defense to her removal.  The fact that someone is a LPR does not bar his or her adjustment of status application in removal proceedings.  See Matter of Mendez, 21 I&N Dec. 296, 298 (BIA 1996)(copy

No person does not have his/her time; no hour does not have its leader.

Celebrate, have faith and maintain hope - welcome to the United States, one of the best countries in the world.

Practice Focus: All Working Visas, Green Cards, Work Authorizations, Deportation and Criminal Aspects of Immigration Law and U.S. Citizenship

attached hereto).  The approved I-130 petition is the prerequisite to adjustment of status.
Thus, Ms. Liebling is the proper beneficiary of the instant I-130 petition.  Ms. Liebling
needs the I-130 adjudicated so that she can apply for adjustment of status in removal
proceedings.

We would respectfully request that you continue processing the I-130 petition in
the instant case. Thank you for your attention to this matter . A prompt response is really
appreciated. A previous request was sent on December 29, 2006 but as of today we have
not received any response.

Very truly yours,

Margaret Wong, Esq.

Westlaw.

21 I. & N. Dec. 296,  Interim Decision (BIA) 3272, 1996 WL 227774 (BIA)

(Cite as: 21 I. & N. Dec. 296,  Interim Decision (BIA) 3272, 1996 WL 227774 (BIA))

Page 1

21 I. & N. Dec. 296,   Interim Decision (BIA) 3272, 1996 WL 227774 (BIA)

United States Department of Justice
Board of Immigration Appeals
IN RE JOSE MENDEZ-MORALEZ, RESPONDENT

File A41 940 178-Lincoln
Decided April 12, 1996

(1) In assessing whether an applicant has met his burden of establishing that a *296 grant of a waiver of inadmissibility is warranted in the exercise of discretion under section 212(h)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. 1182(h)(1)(B) (1994), the Immigration Judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented on his behalf to determine whether the grant of relief in the exercise of discretion appears to be in the best interests of this country.

(2) Establishing extreme hardship and eligibility for section 212(h)(1)(B) relief does not create any entitlement to that relief; extreme hardship, once established, is but one favorable discretionary factor to be considered.

(3) The equities that the applicant for section 212(h)(1)(B) relief must bring forward to establish that he merits a favorable exercise of administrative discretion will depend in each case on the nature and circumstances of the ground of exclusion sought to be waived and on the presence of any additional adverse matters, and as the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting favorable evidence.

(4) Taking responsibility and showing remorse for one's criminal behavior does constitute some evidence of rehabilitation, although an alien who claims innocence and does not express remorse is not precluded from ever presenting persuasive evidence of rehabilitation by other means.

(5) While the lack of persuasive evidence of rehabilitation may not in itself be an adverse factor, the absence of this equity in the alien's favor may ultimately be determinative in a given case concerning the exercise of discretion under section 212(h)(1)(B) of the Act, particularly where an alien has engaged in serious misconduct and there are questions whether the alien will revert to criminal behavior; and conversely, evidence of rehabilitation in some cases may constitute the factor that raises the significance of the alien's equities in total so as to be sufficient to counterbalance the adverse factors in the case and warrant a favorable exercise of discretion.

for respondent


Clayton H. Brant, Esquire

Lincoln, Nebraska

for the Immigration and Naturalization Service

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

21 I. & N. Dec. 296, Interim Decision (BIA) 3272, 1996 WL 227774 (BIA)

(Cite as: 21 I. & N. Dec. 296, Interim Decision (BIA) 3272, 1996 WL 227774 (BIA))

Page 2

Paul R. Sctultz
District Counsel

**\*297 Before: Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, and MATHON, Board Members. Concurring and Dissenting Opinion: SCHMIDT, Chairman, joined by, GUENDELSBERGER, Board Member. Dissenting Opinion: ROSENBERG, Board Member.**

VACCA, Board Member:

## I. PROCEDURAL HISTORY

In a decision dated November 22, 1994, an Immigration Judge found the respondent deportable as charged under section 241(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(i) (1994), as an alien convicted of a crime involving moral turpitude committed within 5 years of entry into the United States. He also denied his application for adjustment of status under section 245(a) of the Act, 8 U.S.C. § 1255(a) (1994), as well as his corresponding application for a waiver of inadmissibility under section 212(h) of the Act, 8 U.S.C. § 1182(h) (1994), and ordered him deported from the United States to Mexico. The respondent has appealed from that decision. The appeal will be dismissed.

## II. ISSUE PRESENTED

The respondent, a 42-year-old native and citizen of Mexico, was first admitted to the United States as a lawful permanent resident on May 2, 1988. He was convicted in a Nebraska court by a jury verdict on November 19, 1992, of first degree sexual assault, in violation of section 28-319(1)(c) of the Nebraska Revised Statutes. For this crime, committed in April or May 1992, the respondent was sentenced on January 5, 1993, to an indeterminate sentence of 2 to 3 years. Reportedly, he was released from prison on parole in January 1995, after having served 1 year of his sentence. The respondent conceded his deportability during the proceedings and has not contested his deportability on appeal. The only issue before us is whether the Immigration Judge properly denied the respondent's application for adjustment of status under section 245 of the Act and, in the exercise of discretion, the corresponding waiver of inadmissibility under section 212(h) of the Act. We find that he did.

## III. ADJUSTMENT OF STATUS UNDER SECTION 245

Section 245 of the Act provides that the Attorney General may in her discretion adjust the status of an alien inspected and admitted or paroled into the United States to that of an alien lawfully admitted for permanent residence if the alien applies for adjustment, the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and an immigrant visa is immediately available. An alien subject to deportation proceedings may also apply for adjustment of status before the Immigration \*298 Judge and, if inadmissible under section 212(a) of the Act, may also apply for a waiver of the ground of inadmissibility. See 8 C.F.R. § 242.17(a) (1995).

In the case before us the respondent's application for adjustment of status is based on his February 20, 1987, marriage to a United States citizen and the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

immediate relative visa petition she filed on his behalf, which was approved by the
Immigration and Naturalization Service on November 21, 1994.  As such, it appears
that the respondent is eligible for an immigrant visa that is immediately available
to him.  The fact that he is a lawful permanent resident does not preclude him from
applying for adjustment of status under section 245.  Tibke v. INS, 335 F.2d 42 (2d
Cir.1964);  Matter of Parodi, 17 I & N Dec. 608 (BIA 1980);  Matter of Loo Bing Sun,
15 I & N Dec. 307 (BIA 1975);  Matter of Krastman, 11 I & N Dec. 720 (BIA 1966);
see also Matter of Gabryelsky, 20 I & N Dec. 750 (BIA 1993).

### IV. WAIVER OF INADMISSIBILITY UNDER SECTION 212(h)

   However, the respondent is not admissible to the United States as required for
eligibility under section 245.  By virtue of his conviction for a crime involving
moral turpitude, he is inadmissible under section 212(a)(2)(A)(i)(I) of the Act. An
alien who is inadmissible under this section as an alien convicted of a crime
involving moral turpitude may seek a waiver of inadmissibility under section 212(h)
of the Act. Section 212(h) may be used to waive inadmissibility which would
otherwise preclude adjustment of status. See Osuchukwu v. INS, 744 F.2d 1136, 1139
(5th Cir.1984);  Matter of Goldeshtein, 20 I & N Dec. 382 (BIA 1991), rev'd on
other grounds, 8 F.3d 645 (9th Cir.1993);  Matter of Parodi, supra;  Matter of
Sanchez, 17 I & N Dec. 218 (BIA 1980);  Matter of Shaughnessy, 12 I & N Dec. 810
(BIA 1968).

 Section 212(h) provides:
     The Attorney General may, in his discretion, waive the application of
   subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) and subparagraph
   (A)(i)(II) of such subsection insofar as it relates to a single offense of
   simple possession of 30 grams or less of marijuana if -
     (1)(A) in the case of any immigrant it is established to the satisfaction of
   the Attorney General that ·
     (i) the alien is excludable only under subparagraph (D)(i) or (D)(ii) of such
   subsection or the activities for which the alien is excludable occurred more
   than 15 years before the date of the alien's application for a visa, entry, or
   adjustment of status,
     (ii) the admission to the United States of such alien would not be contrary to
   the national welfare, safety, or security of the United States, and
     (iii) the alien has been rehabilitated;  or
     (B) in the case of an immigrant who is the spouse, parent, son, or daughter of
   a citizen of the United States or an alien lawfully admitted for permanent
   residence if it is established to the satisfaction of the Attorney General that
   the alien's exclusion would result in extreme hardship to the United States
   citizen or lawfully resident spouse, parent, son, or daughter of such alien; and
     *299 (2) the Attorney General, in his discretion, and pursuant to such terms,
   conditions and procedures as he may by regulations prescribe, has consented to
   the alien's applying for a visa, for admission to the United
   States, or adjustment of status.No waiver shall be provided under this
   subsection in the case of an alien who has been convicted of (or who has
   admitted committing acts that constitute) murder or criminal acts involving
   torture.

 The amended version of section 212(h) essentially creates two categories of
immigrants eligible for section 212(h) relief.  The first category includes any
immigrant who meets eligibility criteria that largely concern the type of exclusion
ground involved or when the excludable activity occurred, as well as issues of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

alien's rehabilitation and the national welfare, safety, or security of the United
States.  The second category includes immigrants who demonstrate the requisite
relationship to a United States citizen or lawful permanent resident, and establish
that their exclusion would result in extreme hardship to that relative.  See Matter
of Alarcon, 20 I & N Dec. 557 (BIA 1992).  In the case at hand, the respondent, who
is assimilated to the position of an immigrant for purposes of seeking adjustment
of status, is married to a United States citizen and has three United States
citizen children.  As such, he may demonstrate eligibility under section
212(h)(1)(B) of the Act by establishing extreme hardship to his United States
citizen wife or children if he were excluded.

   In his decision the Immigration Judge in fact found that extreme hardship to the
wife and children had been established, and that the respondent consequently was
eligible for section 212(h) relief.  However, he denied the section 212(h) waiver
in the exercise of discretion, and accordingly found him ineligible for adjustment
of status because of his inadmissibility resulting from his criminal conviction.

## A. Exercise of Discretion Under Section 212(h)(1)(B): Factors Considered

   On appeal, the respondent has contested the discretionary denial of relief,
arguing that he merited a favorable exercise of discretion in light of his equities
and the hardship to his family if he were deported.  In the respondent's view, the
Immigration Judge erred in ruling that he had not demonstrated rehabilitation and
in placing too much emphasis on his claim of innocence of the crime of which he was
convicted.  According to the respondent, the Immigration Judge also erred in
requiring that rehabilitation be shown.

   As is true for other discretionary forms of relief, the burden is on the applicant
to establish that a grant of a waiver of inadmissibility under section 212(h)(1)(B)
of the Act is warranted in the exercise of discretion. See Matter of Fernandez, 14
I & N Dec. 24 (BIA 1972).  This has been held to be the case for other waivers of
inadmissibility.  See Matter of Marin, 16 I & N Dec. 581 (BIA 1978) (section 212(c)
waiver).  As is also true for other waivers of inadmissibility that would allow an
alien to be admitted to the United States as a *300 lawful permanent resident, the
Immigration Judge must balance the adverse factors evidencing an alien's
undesirability as a permanent resident with the social and humane considerations
presented on his behalf to determine whether the grant of relief in the exercise of
discretion appears to be in the best interests of this country.  See id.

   We find this use of Matter of Marin, supra, as a general guide to be appropriate.
For the most part, it is prudent to avoid cross application, as between different
types of relief, of particular principles or standards for the exercise of
discretion.  Id.  However, our reference to Matter of Marin, supra, is only for the
purpose of the approach taken in that case regarding the balancing of favorable and
unfavorable factors within the context of the relief being sought under section
212(h)(1)(B) of the Act. See, e.g., Palmer v. INS, 4 F.3d 482 (7th Cir.1993)
(balancing of discretionary factors under section 212(h)).  We find this guidance
to be helpful and applicable, given that both forms of relief address the question
of whether aliens with criminal records should be admitted to the United States and
allowed to reside in this country permanently.

   What we do not find applicable is the analysis for determining whether adjustment
of status under section 245 of the Act is warranted in the exercise of discretion,
as set forth in Matter of Arai, 13 I & N Dec. 494 (BIA 1970).  There, the Board

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ruled that generally where there are adverse factors present, favorable factors such as family ties, hardship, length of residence in the United States, etc., will be considered as countervailing factors meriting a favorable exercise of discretion, and that in the absence of adverse factors, adjustment will be ordinarily granted in discretion. See also Matter of Blas, 15 I & N Dec. 626 (BIA 1974; A.G. 1976). This approach has no application to relief under section 212(h) of the Act. A waiver of inadmissibility under section 212(h) necessarily involves at least one adverse consideration, specifically the criminal conviction or activity constituting the ground of exclusion sought to be waived. See Matter of Marin, supra, at 585. Thus, there can be no presumption that relief is warranted in the exercise of discretion. Further, this criminal conviction or activity would usually be more severe than any adverse factor present in the application for adjustment of status, presuming admissibility and general eligibility for adjustment of status.

These principles taken from Matter of Marin, supra, are to be applied in the context of the particular considerations that will arise in an application for section 212(h)(1)(B) relief. Section 212(h)(1)(B) relief is its own distinct form of waiver, with the balancing of factors to be undertaken in view of the particular purposes either stated or inherent in the statute. To exemplify, we would emphasize two considerations that do not often arise in an application for section 212(c) relief. First, a section 212(h) applicant seeking to adjust his status need not be, and in most cases is not already, a lawful permanent resident, and those lawful permanent residents that do apply may not necessarily have the length of residency attained by those eligible for section 212(c) *301 relief. Secondly, those found eligible for relief under section 212(h)(1)(B) will by definition have already established extreme hardship to qualified family members, which would be a factor favorable to the alien in exercising discretion.

We emphasize that establishing extreme hardship and eligibility for section 212(h)(1)(B) relief does not create any entitlement to that relief. Extreme hardship is a requirement for eligibility, but once established it is but one favorable discretionary factor to be considered. We would note, however, that an application for discretionary relief, including a waiver under section 212(h), may be denied in the exercise of discretion without express rulings on the question of statutory eligibility. Matter of Goldeshtein, supra; see also Silva v. Carter, 326 F.2d 315, 320 (9th Cir.1963), cert. denied, 377 U.S. 917 (1964); cf. INS v. Rios-Pineda, 471 U.S. 444, 449 (1985); INS v. Bagamasbad, 429 U.S. 24, 25 (1976). We also emphasize that the discretionary analysis discussed is specifically applicable only to those aliens applying for relief under subsection (B) of 212(h)(1), subsection (A) having particular eligibility criteria that, if met, will affect the exercise of discretion.

In evaluating whether section 212(h)(1)(B) relief is warranted in the exercise of discretion, the factors adverse to the applicant include the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency and seriousness, and the presence of other evidence indicative of an alien's bad character or undesirability as a permanent resident of this country. See e.g., Matter of Marin, supra, and cases cited therein. The favorable considerations include family ties in the United States, residence of long duration in this country (particularly where the alien began his residency at a young age), evidence of hardship to the alien and his family if he is excluded and deported, service in this country's Armed Forces, a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

history of stable employment, the existence of property or business ties, evidence of value and service to the community, evidence of genuine rehabilitation if a criminal record exists, and other evidence attesting to the alien's good character (e.g., affidavits from family, friends, and responsible community representatives). See, e.g., id., and cases cited therein.

Upon review of the record as a whole, the Immigration Judge is required to balance the equities and adverse matters to determine whether discretion should be favorably exercised.  The basis for the Immigration Judge's decision must be enunciated in his opinion.  See, e.g., id.  The equities that the applicant for section 212(h)(1)(B) relief must bring forward to establish that he merits a favorable exercise of administrative discretion will depend in each case on the nature and circumstances of the ground of exclusion sought to be waived and on the presence of any additional adverse matters, and as the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting favorable evidence.  See, e.g., id.

*302 The underlying significance of the adverse and favorable factors is also to be taken into account.  For example, if the alien has relatives in the United States, the quality of their relationship must be considered in determining the weight to be awarded this equity.  Further, the equity of a marriage and the weight given to any hardship to the spouse is diminished if the parties married after the commencement of deportation proceedings, with knowledge that the alien might be deported.  Ghassan v. INS, 972 F.2d 631 (5th Cir.1992), cert. denied, 507 U.S. 971 (1993).  Similarly, if the alien has a history of employment, it is important to consider the type of employment and its length and stability.  Further, when looking at the length of the alien's presence in the United States, the nature of his presence during this period must be evaluated.  For example, a period of residency marked by a term of imprisonment diminishes the significance of the period of residency.  See generally Douglas v. INS, 28 F.3d 241 (2d. Cir.1994) (residency marked by criminal activity).

## B. Exercise of Discretion in Respondent's Case

Having reviewed the record and the Immigration Judge's decision, and the contentions made on appeal, we agree with the Immigration Judge that a favorable exercise of discretion is not warranted.  The respondent has demonstrated equities that may be characterized as substantial.  Although he has only been in this country lawfully for a little more than 7 years, he does have significant family ties, including his United States citizen wife of 8 years.  His United States citizen children include a 9-year-old stepson, a 7-year-old daughter, and a 4-year-old son.  According to the wife's testimony, the respondent has been a loving father and the children are close to him emotionally.  The respondent also has a consistent history of employment as an agricultural worker and mechanic at various ranches, and he has testified that his most recent employer has assured him of a position as a mechanic at $6 an hour upon his release from prison.  The record also reflects that the respondent has continuously supported his family financially before his incarceration, except for a period in 1991 when he injured his back. The family began receiving food stamps that year, and since his incarceration they have also received welfare payments and housing assistance as well.  The respondent's wife last worked as a cashier for a department store from 1989 to 1991, when she was terminated from her employment because she was pregnant.

The respondent also has other family ties in the United States, including two

21 I. & N. Dec. 296,  Interim Decision (BIA) 3272, 1996 WL 227774 (BIA)                    Page 7

(Cite as: 21 I. & N. Dec. 296,  Interim Decision (BIA) 3272, 1996 WL 227774 (BIA))

lawful permanent resident brothers living in Colorado and Kansas, a sister living in Colorado, and his lawful permanent resident parents, who also live in Colorado and who are self-supporting.  The respondent testified that his sister was not a lawful permanent resident, but he did not elaborate as to her specific status in this country.  The respondent also testified that he has two children in Mexico, but he has no contact with them and does not know their whereabouts.

*303 As noted above, the Immigration Judge found that the respondent's departure would cause extreme hardship to his wife and children, as they are dependent upon him financially and are emotionally close to him.  The wife testified that if her husband were deported she would remain in the United States with the children and likely move to Kansas with her adoptive father.  She also testified that she was receiving psychiatric treatment for depression, noting that she had attempted to commit suicide in 1992 after the criminal charges were filed against her husband, and observing that she was attempting to obtain disability payments. She also observed that she had a medical condition involving her spine and hips that precluded her from lifting things.

In sum, the respondent has demonstrated substantial equities in his favor, including hardship to his wife and children if he were deported.  Some hardship to the respondent is also apparent in view of his ties to this country and the poor economic conditions in Mexico, as documented by news articles submitted by the respondent, although he has not demonstrated that he would be virtually precluded from finding employment in Mexico.  However, his equities must be balanced against the adverse factors in his case, particularly the serious crime of which he was convicted.  The seriousness of his crime can be seen from a reading of the statute under which he was convicted and the surrounding circumstances.  The Nebraska statute in question provides:

Sexual assault; first degree; penalty.

(1) Any person who subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion or deception, (b) knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree.

2) Sexual assault in the first degree is a Class II felony.  The sentencing judge shall consider whether the actor shall have caused serious personal injury to the victim in reaching his decision on the sentence.

(3) Any person who shall be found guilty of sexual assault in the first degree for a second time shall be sentenced to not less than twenty-five years and shall not be eligible for parole.Neb. Rev. Stat. § 28-319 (1992).

The respondent was convicted under section 28-319(1)(c) of sexually penetrating a victim under the age of 16. In fact the record before the Immigration Judge made clear that the respondent's victim was 13 years old at the time of the sexual assault, at a time when he was 40 years of age. [FN][FN] The young girl, who lived in the same apartment building, frequented the respondent's home.  Apparently she practically lived there, reportedly because her own mother was mentally disabled to some degree and did not exert much *304 parental control, and the respondent and his wife were not willing to force her to leave.  The respondent has acknowledged that their unwillingness to force her to leave led to situations where the young girl was present when he and his wife were watching sexually explicit movies or

engaging in sexual intercourse themselves.  He has also admitted soliciting the victim's mentally disabled mother for sex, as repayment for money the mother had borrowed from him.  According to the respondent, he did this in order to discourage her from asking to borrow more money.  The circumstances of his crime clearly show its egregiousness.

We point out that as a matter of law, a 13-year-old child is incapable of consent where the act is being perpetrated by a grown man 27 years older.  Where a statute makes sexual acts with a child under a specified age a crime, without regard to consent, such statutes are construed as fixing the age of consent.  The purpose of these statutes is to protect children from illicit acts by rendering them incapable of consenting .  See Matter of Dingena, 11 I & N Dec. 723 (BIA 1966).

Given the nature of the respondent's crime, we do not find that his equities are sufficient to counterbalance its seriousness.  We find this to be particularly so given that his equities do not include any persuasive evidence of rehabilitation.  We do not find his release from prison after 1 year due to his good conduct in following prison rules in a controlled setting to be persuasive evidence of rehabilitation from his criminal act of sexually assaulting a young child.  At his hearing, the respondent denied that the sexual assault ever occurred, stated that he had been " falsely accused," and did not express remorse for his crime.  In addition, when asked whether he had attempted to get any " sexual offender treatment," he responded, " I believe that I do not have a sexual problem."

The respondent argues on appeal that his assertion of innocence should not be used against him because he is, in fact, innocent and the criminal justice system makes mistakes, and he therefore should not be forced to be dishonest with himself.  However, in ascertaining the effect of a criminal conviction, neither the Board nor the Immigration Judge may go beyond the judicial record to determine the guilt or innocence of an alien. See Matter of Edwards, 20 I & N Dec. 191 (BIA 1990);  Matter of Khalik, 17 I & N Dec. 518 (BIA 1980).  He must be considered guilty of the crime.  Taking responsibility and showing remorse for one's criminal behavior does constitute some evidence of rehabilitation.  See Gonzalez v. INS, 996 F.2d 804 (6th Cir.1993);  Villareal-San Miguel v. INS, 975 F.2d 248 (5th Cir.1992);  Akrap v. INS, 966 F.2d 267 (7th Cir.1992).  This is not to say that an alien who claims innocence and does not express remorse could never present persuasive evidence of rehabilitation by other means.  But the fact remains that in the case before us, there is no evidence of remorse or of acknowledgement of guilt.  Moreover, the claim of innocence is inconsistent with the jury verdict and the *305 respondent's own pre-trial admission that he had engaged in sexual intercourse with the victim.
FN1FN2]

The Board acknowledges the humanitarian concerns in this case, particularly the hardship to the respondent's wife and children, but the Board also has the obligation to consider the welfare and safety of the other citizens and residents of this country in making its discretionary determination.  In the case before us, we have an individual who sexually assaulted a 13-year-old girl.  After serving a short period of imprisonment, he has not offered any significant evidence that he is rehabilitated from his criminal behavior.

As pointed out by the respondent on appeal, a showing of rehabilitation is not an absolute prerequisite in all cases involving an alien with a criminal record.  However, rehabilitation or the lack thereof is a factor to be considered in the exercise of discretion, and it may be ultimately determinative in some cases. See

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Matter of Edwards, supra.  There will be cases where such a showing is necessary before a favorable exercise of discretion is warranted in view of the other aspects of the case. Thus, while the lack of persuasive evidence of rehabilitation may not in itself be an adverse factor, the absence of this equity in the alien's favor may ultimately be determinative in a given case, particularly where an alien has engaged in serious misconduct and there are questions whether the alien will revert to criminal behavior.  Conversely, evidence of rehabilitation in some cases may constitute the factor that raises the significance of the alien's equities in total so as to be sufficient to counterbalance the adverse factors in the case and warrant a favorable exercise of discretion.

However, having weighed the respondent's equities in this case, which do not include persuasive evidence of rehabilitation, against the extremely serious nature of his criminal behavior involving a sexual offense against a child, the Board agrees that the respondent has not met his burden of establishing that a grant of section 212(h) relief is warranted in the exercise of discretion. Accordingly, the appeal will be dismissed.

ORDER:  The appeal is dismissed.

FN1. While the Immigration Judge and this Board may not go beyond the record of conviction to determine the guilt or innocence of the alien, it is proper to look to probative evidence outside the record of conviction in inquiring as to the circumstances surrounding the commission of the crime in order to determine whether a favorable exercise of discretion is warranted. Matter of Edwards, 20 I & N Dec. 191 (BIA 1990).

FN2. The respondent underwent a polygraph examination in July 1992.  A copy of the polygraph report was admitted into evidence at the deportation hearing without objection.  The report reflects that following the questioning of the respondent, he acknowledged to the examiner that he had engaged in a sexual act with the victim.  When questioned about this by the Immigration Judge, the respondent acknowledged this admission, but testified that the polygraph examiner kept " moving the needles with his fingers ... and after that [he] was forced to say yes."  In his decision, the Immigration Judge found that the respondent's testimony in this regard was not credible.  On appeal, the respondent does not challenge, or even reference, this evidence and adverse finding by the Immigration Judge.


*306 CONCURRING/DISSENTING OPINION:  Paul W. Schmidt, Chairman, in which John Guendelsberger, Board Member, joined

1 respectfully concur in part and dissent in part.  I concur in the analysis of the general criteria to be applied in exercising discretion under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. 1182(h) (1994), as contained in parts I, II, III, and IV(A) of the majority opinion.  However, I dissent from the application of those criteria to the facts of this case, as contained in Part IV(B) of the majority opinion.

As recognized by the majority, the respondent has very substantial family equities in the United States.  He has a United States citizen wife of 8 years, two United States citizen children, a 7-year-old daughter and a 4-year-old son, and a 9-year-old United States citizen stepson.  His wife suffers from severe depression and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

other medical conditions. She has not worked in 4 years. There has been a finding that the respondent's deportation would cause extreme hardship to his wife and children, as they are dependent upon him financially and are emotionally close to him.

The respondent also has other family ties to the United States, including two lawful permanent resident brothers and lawful permanent resident parents. The majority acknowledges that the respondent's economic outlook in Mexico is bleak, thereby inhibiting his ability to contribute to the support of his family in the United States.

It also seems unlikely that his family will be able to afford to visit the respondent in Mexico. The respondent's ability to visit his family in the United States will depend upon the willingness of the United States Department of State to recommend, and the Immigration and Naturalization Service to grant, a waiver of inadmissibility to an inadmissible nonimmigrant. Moreover, from my experience, it is quite possible that, even with a waiver, the respondent would be precluded from future visits as a nonimmigrant because the presence of an immediate family in the United States would be considered evidence of a lack of " proper nonimmigrant intent" on the respondent's part. Therefore, the respondent's deportation is likely to permanently sever the family unit.

The respondent's crime is serious, involving sexual misconduct with a minor. However, the respondent, who is 42 years old with no known prior history of sexual offenses, was required to serve only 1 year of a potential 3-year sentence. That indicates at least some confidence on the part of the State of Nebraska that the respondent's sexual offense was unlikely to be repeated and that its citizens did not need the extra protection from the respondent that a longer sentence might have offered.

As described by the majority, the respondent was convicted under a Nebraska statute that made the element of consent by the minor irrelevant. It appears that the rather unusual interrelationship between the respondent's family and the victim's family, which provided the context for the sexual *307 assault on the 13-year-old victim, no longer exists and is unlikely to be replicated. Therefore, although we all admittedly lack clairvoyance, there is some reason, based on this record, to believe that a repetition of the respondent's serious sexual misconduct is unlikely.

In addition to the nature of the crime, the majority's other primary reasons for denying relief are interrelated and involve the respondent's failure to demonstrate remorsefulness, truthfulness, and rehabilitation when confronted with his crime during the hearing before the Immigration Judge. These interrelated adverse considerations, while serious, do not, in my opinion, warrant a denial of the section 212(h) waiver to the respondent. See Matter of Edwards, 20 I & N Dec. 191 (BIA 1990).

This is admittedly a close case. However, I believe that the extreme hardship that will be suffered by the respondent's United States citizen family, his extensive family ties to the United States, and the evidence of record suggesting a relatively low risk of recidivist behavior outweigh the adverse factors relied upon by my colleagues in the majority. I therefore would grant the respondent a section 212(h) waiver.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

21 I. & N. Dec. 296,  Interim Decision (BIA) 3272, 1996 WL 227774 (BIA)                    Page 11

(Cite as: 21 I. & N. Dec. 296,  Interim Decision (BIA) 3272, 1996 WL 227774 (BIA))

Consequently, I respectfully dissent from Part IV(B) of the majority decision which denies the section 212(h) waiver in the exercise of discretion.

DISSENTING OPINION:  Lory D. Rosenberg, Board Member

I respectfully dissent.

This case involves an individual who has been convicted of one serious crime of moral turpitude. As a result he has applied for a waiver and demonstrated that he is statutorily qualified for the waiver he needs, as his wife and children will suffer extreme hardship in the event of his deportation. Despite this, the Immigration Judge denied his waiver application and the majority of this Board affirms that denial. At issue in the resolution of this appeal is this Board's interpretation of the statute governing applications for waivers under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h) (1994), and this Board's application of the standard it employs in the exercise of discretion in such cases.

My quarrel with the reasoning and conclusion adopted by the majority goes beyond a disagreement over the weight to be given the favorable and adverse factors of record and the outcome of that balancing exercise. In my view, the majority makes a fundamental error when it embraces exclusively this Board's articulation of discretionary factors which make up the entirety of a waiver adjudication under section 212(c) of the Act. Matter of Marin, 16 I & N Dec. 581 (BIA 1978). Such an analysis fails to give meaning to the unique statutory language which characterizes a waiver under section 212(h) and distinguishes it from other waivers provided by the Act. While the majority cautions that " it is prudent to avoid cross-application"  between different principles or standards for the exercise of discretion, these well-intentioned *308 words of caution do not prevent its inevitable descent down this slippery slope.

                    I.  IMPROPER CONSTRUCTION OF THE STATUTE

The starting point of any interpretation begins with a construction of the statute. Chevron, U.S.A., Inc., v. Natural Resources Defense Council Inc., 467 U.S. 837 (1984). If the statutory language is clear, both the courts and the Board must give effect to the unambiguously expressed intent of Congress. Matter of Farias, Interim Decision 3269 (BIA 1996) (Holmes, Rosenberg, concurring); Matter of Hou, 20 I & N Dec. 513, 519-20 (BIA 1992); see also K Mart v. Cartier, Inc., 486 U.S. 281, 291 (in ascertaining " plain meaning,"  the Board must look not only to the statutory language at issue, but to the language and design of the statute as a whole).

The text of the particular section at issue here, which provides a discretionary waiver for acts of prostitution and crimes involving moral turpitude, is found in the opinion of the majority. Notably, as most recently amended in 1990, it contains two subsections:  one, section 212(h)(1)(A), governs applications by persons who seek a waiver for offenses which occurred more than 15 years before the application and explicitly requires a showing of rehabilitation, but does not require either that certain family relationships exist or that a showing of extreme hardship to those persons be made as a predicate for the exercise of discretion. The other, section 212(h)(1)(B), with which we are concerned here, does require both the existence of specific family relationships and evidence of extreme hardship to those designated persons in the absence of a waiver. There is no statutory requirement either that any particular amount of time must have passed

since the offense giving rise to the need for the waiver, or that rehabilitation be demonstrated or that admission be in the national interest.

   This Board, acknowledging the principle underlying the Supreme Court's decision in INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987), has stated:  " It is a well-established rule of statutory construction that, in cases in which Congress includes particular language in one section of a statute but omits that language in another ..., a presumption arises that the disparate inclusion and exclusion was intentional and purposeful."   Matter of Hou, supra.  I believe that the reasoning employed and the result reached by the majority in this case depart without reason from this important maxim.

   In my opinion, to best effectuate the intent of Congress as expressed by the statutory language of any discretionary waiver within the Act, the equities should be weighed and balanced differently relative to the statutory eligibility factors required. If that is not done in this case, then the statutory language distinct to section 212(h)(1)(B), as compared to other waivers provided by the statute, is rendered meaningless.

   *309 A. Section 212(h)(1)(B) Explicitly Requires Evidence of Extreme Hardship to Family Members

   In a section 212(h)(1)(B) case, the statutory emphasis is on the existence of specified close family members and a showing of extreme hardship to those family members.  Close family ties and a compelling level of economic, personal, or professional harm or suffering amounting to extreme hardship are statutory predicates for the exercise of discretion.  By contrast, in section 212(c) applications, they are no more than individual considerations, albeit important and arguably primary ones, in the overall exercise of discretion.

   While it might constitute a reasonable exercise of discretion to deny a waiver under section 212(c) despite evidence of close family ties and hardship on the basis that these are merely factors on the positive side of the discretionary equation, I cannot conclude that comparable treatment of the same factors in a section 212(h) waiver case would be appropriate.  The majority tends to ignore the statutory distinction between these waiver provisions, and fails to treat the section 212(h) waiver applicant as entering into the discretionary arena already having met a significant mandatory standard which itself necessitates the assembly of impressive favorable factors.  Rather, the majority appears to give little if any weight in the subsequent exercise of discretion to the fact that a section 212(h) applicant has already established close family ties and extreme hardship. FN[FN1]

   Further, I take issue with the conclusion of the majority that the precedent decisions issued by this Board pertaining to adjustment of status under section 245 of the Act are inapposite.  A waiver under section 212(h) historically and literally arises in connection with an application for admission, since, to date, this Board has not recognized the availability of this waiver to those within the United States only seeking to avoid deportation.  Cf. Yeung v. INS, 76 F.3d 337 (11th Cir. 1996).  The typical waiver applicant either is not yet a lawful permanent resident or is a lawful permanent resident seeking that status anew.  See Matter of Gabreylsky, 20 I & N Dec. 750 (BIA 1994).  FN[FN2] While some immigrant visas are provided for those approved in asylee, refugee, or employment-based categories, over two-thirds of immigration to the United States is based upon family relationships, and family reunification is a *310 fundamental purpose underlying

the terms of Act. I cannot agree that our decisions concerning the exercise of discretionary factors involving the admission of close family relatives have no applicability here. [FN[FN3]]

B. Section 212(h)(1)(B) Explicitly Does Not Require Evidence of Rehabilitation

The majority finds not only that the statutory standard has been satisfied but that substantial equities exist. That being the case, one might ask, why then does the majority conclude the waiver is not warranted?  The only bases articulated by the majority are the nature of the conviction involved and the issue of rehabilitation in the respondent's case.  While these are not improper factors for consideration in the ultimate discretionary equation in either a section 212(c) or a section 212(h) case, it is notable that the factor of rehabilitation specifically is not a statutory prerequisite to the exercise of discretion in a section 212(h) application submitted under section 212(h)(1)(B).

In my view, however, by importing without distinction the established discretionary factors applicable in a section 212(c) adjudication (where rehabilitation is an equity, see Matter of Marin, supra) into a section 212(h) adjudication, the majority has skewed the basis for a reasonable adjudication consistent with the governing statutory section and the fair exercise of discretion. [FN[FN4]] Not only does the majority consider rehabilitation in this case, but it elevates rehabilitation as at least one of two determinative factors in its denial.  A reading of the majority decision suggests that the statutorily required elements of close family ties and extreme hardship pale next to the presence or absence of rehabilitation. Moreover, I believe that the emphasis given its finding that rehabilitation is not present (which I dispute) constitutes an improper assessment of rehabilitation contrary to our holdings in both Matter of Arreguin, Interim Decision 3247 (BIA 1995) (stating that absence of one or more favorable factors does not convert such factors into adverse considerations), and Matter of Edwards, 20 I & N Dec. 191 (BIA 1990) (holding that absolute rehabilitation is not required).

*311 II. IMPROPER BALANCING OF DISCRETIONARY FACTORS

A. Undue Emphasis on Admission of Guilt

While rehabilitation is not a statutory requirement, it is not unreasonable to consider this factor in light of the fact that a section 212(h)(1)(B) waiver overcomes excludability based upon either criminal conduct or a conviction. However, in its discretionary determination, the majority follows the course set by the Immigration Judge and treats the absence of an outright admission of guilt by the respondent as dispositive of the absence of rehabilitation.  Cf. Matter of Roberts, 20 I & N Dec. 294 (BIA 1991).  In my view, this constitutes an impermissible treatment of the rehabilitative element of remorse, contrary to the decisions of this Board and the courts of appeals. See Guillen-Garcia v. INS, 999 F.2d 199 (7th Cir.1993); Matter of Edwards, supra. I am inclined to adopt the reasoning of the United States Court of Appeals for the Seventh Circuit, which was articulated most recently in Canales-Lopez v. INS, No. 95-2113, 1996 WL 21673 (7th Cir.), [FN[FN5]] that reliance on a failure or refusal to acknowledge guilt, no matter how framed, " does not constitute adequate consideration of all the circumstances surrounding the petitioner's efforts to demonstrate rehabilitation." Id. at 2 (citing Guillen-Garcia v. INS, supra, at 205);  see also Guillen-Garcia v. INS, 60 F.3d 340, 344-45 (7th Cir.1995) (upholding BIA on other grounds), cert. denied, 116 S.Ct. 775 (1996).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Elevation of a claim of innocence as dispositive of a lack of rehabilitation actually does what we say we will not do-redetermine guilt or innocence. Cf. Matter of Roberts, supra.  Matter of Roberts states clearly that for discretionary purposes we may look behind the conviction-but we may not redetermine guilt or innocence.  Id. at 301.  If we are allowed to look at mitigating factors (and lack of culpability going to an inability to express remorse for something one has not done would fall into that zone), we should not penalize an alien who testifies to innocence under oath, barring a showing that he has intentionally given false testimony.  An individual faces an untenable situation if subsequent discretionary relief-be it sentencing disposition or collateral immigration benefits-is conditioned upon an admission of guilt.  As a result, some federal courts have long recognized that even after conviction, when post-conviction options may have been exhausted, it continues to be unfair and unreasonable to require a defendant to admit guilt (contrary to his testimony in the criminal proceedings), as to do so also might be to require him to admit perjury. [FN6]

*312 In this case, the respondent did not plead guilty in his criminal trial but maintained his innocence and was found guilty. In the record before us, the respondent admitted to aspects of the criminal conduct in question and denied the explicit charges underlying his conviction. [FN7] The Immigration Judge acknowledged that the respondent testified that he recognizes the crime involved to be a serious one, for which someone should be punished.  The majority emphasizes the fact of the respondent's responses on the lie detector test administered prior to trial as compared with his testimony before the Immigration Judge. [FN8] This not only appears to contravene this Board's position in Matter of Roberts, supra, but the majority fails to indicate the ultimate significance of either the respondent's statement or the results of the test. [FN9] This is particularly so, in light of the fact that the majority itself acknowledges in the same paragraph that one who claims innocence is not categorically foreclosed from establishing that he has taken steps towards rehabilitation.  Matter of Edwards, supra;u.

In assessing rehabilitation, we are making " an estimate or prediction of an individual's future conduct." Palacios-Torres v. INS, 995 F.2d 96, 99 (7th Cir.1993).  The respondent and his wife are well aware of the poor judgment and unacceptable conduct which characterized their former living situation.  The family has moved away from the area in which the circumstances giving *313 rise to the respondent's crime occurred.  There is no evidence of any criminal conduct whatsoever by the respondent prior to the situation which underlies the respondent's conviction. Further, there is no evidence of recidivism during the pendency of the criminal charges or since his release for good behavior following a 1-year period of incarceration, an early release from a 3-year sentence. FN[FN10]

The majority contends that it is not holding that one who claims innocence and fails to express remorse is precluded from ever showing persuasive evidence of rehabilitation.  However, here the respondent has presented his role in his family, his productive employment, and the absence of any other criminal conduct. The majority's failure to articulate any other basis for its rejection of the respondent's claim of rehabilitation, however, renders its treatment of the absence of an admission of guilt as being determinative of an insufficient level of rehabilitation. Canales-Lopez v. INS, supra; cf. Matter of Edwards, supra.  I believe that reliance upon the absence of evidence of remorse, coupled only with the serious nature of the single criminal offense giving rise to this respondent's need for a waiver is not a sound basis on which to deny relief in this case.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

21 I. & N. Dec. 296, Interim Decision (BIA) 3272, 1996 WL 227774 (BIA)                                    Page 15

(Cite as: 21 I. & N. Dec. 296, Interim Decision (BIA) 3272, 1996 WL 227774 (BIA))

### B. Undue Weight Given Criminal Offense

This is a waiver we are adjudicating. It presupposes a violation of the immigration laws. An application under section 212(h) comes before us only when there has been either conduct involving prostitution or conviction or admission of a crime involving moral turpitude. No applicant will ever appear before us who has not committed an offense which we consider, in some degree, reprehensible. In my opinion, the result reached by the majority certainly appears to approach an impermissible per se basis in which to deny a discretionary waiver. See Gonzales v. INS, 996 F. 2d 804, 810 (6th Cir.1993); cf. Matter of Burbano, 20 I & N Dec. 872, 877-78 (BIA 1995). But see Yepes-Prado v. INS, 10 F.3d 1363, 1371-72 (9th Cir.1993).

Indeed, I believe we contravene the statute when we so readily engage in the practice of finding the offense to be waived an adequate basis alone on which to deny relief. [FN11] Moreover, I don't believe that one can read the *314 majority opinion without concluding that it has relegated the significant and compelling factors of family ties and extreme hardship to the back burner. I cannot find that dismissing statutory prerequisites or treating them as no more than a threshold for a discretionary adjudication which demands other factors to overcome the adverse factor of the offense giving rise to the need for a waiver is either reasonable in the exercise of discretion or consistent with the statute.

The respondent is in violation of the immigration laws on account of a single, albeit serious, conviction, giving rise to his need for a section 212(h) waiver. His crime, statutory rape of a young teenager, is not to be dismissed lightly and it should be punished-in the criminal justice system, and examined further-in the exercise of our discretion to waive his deportation. Whether it is an offense such that under no circumstances should this man be allowed to remain in the United States with his family as a lawful permanent resident after being released from prison with good conduct reports and when his wife and children want and need him is another story.

The respondent has established, as the majority concedes, substantial equities relating to the statutory qualifications of close family ties and extreme hardship to be suffered by the family members should the respondent be deported. His wife begs us to allow him to remain, and there is ample evidence in the record that she has suffered depression on account of the circumstances and other hardships due to his absence, which will only be exacerbated by his deportation. Further, his deportation would mean not only a loss of financial support to the household and his children's loss of the presence of their father, but the permanent disruption of this family.

In addition to the factors emphasized explicitly by Congress, the record reflects that the respondent has resided in the United States for 13 years and has been a lawful permanent resident since 1987. There is evidence that he is a responsible husband and father who previously was regularly employed and supported his family, and that he has employment to which he will return. While in prison he studied towards receiving his GED. The record also contains enthusiastic commendations of his character and of his being an honest, hardworking individual. Each of these factors individually and cumulatively indicates that he has the character and family base from which he can return to society as a contributor rather than a predator, and that he has taken steps towards rehabilitation from the conduct resulting in his conviction.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

With regard to his conviction, I believe he attempted to provide an explanation for his criminal conduct, and while his unwillingness to acknowledge his offense squarely may be the product of shame or denial, I don't find him to be either an outright liar or an unrepentant criminal.  Nor do I conclude, as **315** apparently the majority does, that his failure to acknowledge culpability to their satisfaction is a reliable indicia of either rehabilitation or future conduct. With the exception of the poor exercise of judgment in condoning the situation which led to his commission of the crime in question, there is no evidence that the respondent lived other than a normal lifestyle.  He has no criminal record of any kind other than the offense giving rise to these proceedings.  He has no prior immigration violations.  He provided evidence of good conduct while in prison.

I note that this crime was an aberration in his otherwise law-abiding history and appeared connected to the unorthodox circumstances of the family's living situation in relation to their former neighbors.  That living situation no longer exists.  In my opinion there is absolutely no reason to conclude that he would not move on from this incident, which I view as an aberration in an otherwise regular record, and continue to be a provider for his family and a contributing member of our society.

I do not contend that this Board may not or should not address either the offense itself or rehabilitation in the course of adjudicating a waiver application under section 212(h) of the Act. However, in this case, the majority not only fails to address any other aspect of rehabilitation present in the record, but concludes, without citing any evidence of record or other authority, that the nature of the crime for which this applicant already has been convicted and imprisoned is serious enough to make him an undesirable member of our society in the future.  I conclude that such a treatment of the record not only constitutes an abuse of our discretion, but does violence to the statutory language.

III. CONCLUSION

I believe it is reasonable to look at the statute in a way which gives meaning and reason to its separate provisions overall.  In my view the majority's failure to truly distinguish section 212(h) from other waiver provisions according to its statutory components impermissibly skews and distorts the majority's discretionary assessment.  I believe that discretionary assessment is flawed further by the majority's over-reliance on an admission of culpability and the specific crime involved in lieu of a fair consideration, on balance, of the overwhelming evidence of strong family ties and the hardship the family faces without the respondent, as well as the respondent's role as a provider, reports of his good conduct, affirmations of his good character, and no evidence of anything other than a good prognosis for the future.  I would grant the relief requested in the exercise of discretion.

FN1. The majority's citation to INS v. Bagamasbad, 429 U.S. 24, 25 (1976), and Matter of Goldeshtein, 20 I & N Dec. 382 (BIA 1991), rev'd on other grounds, 8 F.3d 645 (9th Cir.1993), for the proposition that an adjudicator need not even address the statutory " extreme hardship" predicate for the exercise of discretion in suspension and section 212(h) adjudications is misleading in the context of this case.  While it is true that an adjudicator need not make express rulings concerning statutory eligibility, and may skip ahead to a discretionary denial in appropriate cases, this does not provide the adjudicator with a license to ignore relevant factors in rendering that discretionary determination.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

21 I. & N. Dec. 296,  Interim Decision (BIA) 3272, 1996 WL 227774 (BIA)                    Page 17

(Cite as: 21 I. & N. Dec. 296,  Interim Decision (BIA) 3272, 1996 WL 227774 (BIA))

FN2. The respondent has resided in the United States since 1983 and has held the status of a lawful permanent resident for over 7 years.  He is applying for lawful resident status anew, in conjunction with his application for a waiver.

FN3. It appears that the reason the majority dismisses as inapplicable the discretionary evaluations conducted in Matter of Arai, 13 I & N Dec. 494, 495-96 (BIA 1970), modifying Matter of Ortiz-Prieto, 11 I & N Dec. 317 (BIA 1965) (holding that adjustment of status could be granted only when outstanding equities were present), is that the adverse factor which triggers the need for a section 212(h) waiver is a criminal conviction. Nonetheless, I believe it instructive that we found that Ortiz-Prieto was " too broad in its impact and probably more demanding than necessary," and concluded that factors such as family ties, hardship, and length of residence constitute countervailing factors warranting a favorable exercise of discretion.  Matter of Arai, supra, at 495.

FN4. For example, the majority states that " he has only been in the United States for a little more than 7 years."  (Emphasis added.)  While this may be relevant in a section 212(c) case, in fact, a waiver under section 212(h) was originally contemplated to provide a means of overcoming excludability for a new immigrant who has not been in the United States at all.

FN5. While I understand that Canales-Lopez v. INS, supra, is an unpublished decision, it provides a compelling analysis of this Board's consideration of the element of an admission of guilt in the context of establishing rehabilitation as a discretionary equity, one which I adopt for purposes of my dissent in this case.

FN6. See Thomas v. United States, 368 F.2d 941, 945 (5th Cir.1966), in which the court determined that the defendant was " between the devil and the deep blue sea," when the district court told him to repent or receive a longer sentence. See also Miller v. United States, 589 F.2d 1117, 1138 (1st Cir.1978), cert. denied, 440 U.S. 958 (1979); Scott v. United States, 419 F.2d 264 (D.C.Cir.1969). In fact, the Scott court noted that a glib willingness to admit guilt in order to secure something in return may indicate quite the opposite of repentance.

FN7. Evidence in the record, contained in the investigating ng officer's report and in a pre-trial polygraph report, reflects that an unorthodox situation had developed in the apartment complex, that the assaulted child was in counseling with a social worker, that she received no parental control or guidance, that rumors of a sexual relationship between the child and the respondent had been circulated by the child throughout the apartment complex, and that a prior investigation had revealed no evidence of such a relationship.  The respondent does not deny having improperly touched the child or having allowed her to remain in his family's apartment, and he admits that he wrestled with her and even that he had, in his wife's presence, lain on top of her.

FN8. The report of the lie detector examination reveals that upon admitting having had sexual intercourse with the complainant, the respondent explained further that the complainant, a neighbor's daughter, approached him in his

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06406    Document 1    Filed 11/13/2007    Page 47 of 47

21 I. & N. Dec. 296,   Interim Decision (BIA) 3272, 1996 WL 227774 (BIA)                              Page 18
(Cite as: 21 I. & N. Dec. 296,   Interim Decision (BIA) 3272, 1996 WL 227774 (BIA))

apartment, and lay down on his bed next to him.  While I don't doubt that the alleged sexual contact occurred, I can understand how, in the hearing before the Immigration Judge, the respondent, not being legally trained to understand the concept of a minor's lack of consent, and given the unorthodox situation which preceded this incident, would not think of his conduct necessarily as forcible sex or a sexual <u>assault</u>, as the charge and conviction is worded.

   FN9. Under the circumstances, he could honestly admit the act but deny the charge as entitled in the record of conviction without being inconsistent or incredible.  See <u>Canales-Lopez v. INS</u>, <u>supra</u>, at 2 (Board's denial of relief as being on account of lack of credibility rather unacceptable, as relief cannot be denied on this basis alone, and lack of credibility for failing to acknowledge guilt is not a separate ground supporting a denial).  <u>See also</u> <u>Guillen-Garcia v. INS</u>, <u>supra</u>, at 205.

   FN10. The record reflects that while in prison the respondent achieved " exemplary unit conduct and observed work performance," and that he had no infractions and conducted himself according the institution's rules and orders.

   FN11. I recognize that we have said consistently in the section 212(c) context that a single factor may be so egregious as to overwhelm any existing equities.  <u>Matter of Marin</u>, <u>supra</u>, at 584-85.  I do not disagree with that principle nor do I disagree with the majority that we must also consider the safety and well-being of others in our society.  I do not foreclose the possibility that, based on concrete evidence of recidivism, a propensity for violence, or actual harm that will be caused by allowing an offender to remain in this country, denial based upon a single underlying offense might not be appropriate.  However, I read <u>Matter of Marin</u> to mean that when dealing with the offense to be waived, such a result, while not impermissible, must be the exception rather than the rule.  <u>See also</u> <u>Braun v. INS</u>, 992 F.2d 1016, 1020 (9th Cir.1993); <u>Matter of Alonzo, 17 I & N Dec. 292 (Comm.1979)</u> (if underlying offense is considered, a waiver could be denied in every case).


21 I. & N. Dec. 296,   Interim Decision (BIA) 3272, 1996 WL 227774 (BIA)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.